1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

NEIL GRENNING,                                    )

                                                  )

                                                  )

            Plaintiff,                            )   NO.  CV-12-0600-JLQ

                                                  )

    v.                                            )   **ORDER DENYING IN PART AND**
                                                  )   **GRANTING IN PART DEFENDANTS'**
RISA A. KLEMME, et al.,                           )   **MOTION FOR SUMMARY**
                                                  )   **JUDGMENT AND PLAINTIFF'S**
                                                  )   **"MOTION TO STAY"; GRANTING**
            Defendants.                           )   **PLAINTIFFS' MOTION TO AMEND**
                                                  )   **COMPLAINT TO IDENTIFY JOHN**
_____ )   **DOES**

        BEFORE THE COURT are Defendants' Motion for Summary Judgment

(ECF No. 56); Plaintiff's Motion to Stay Summary Judgment Until Completion of

Discovery Pursuant to Rule 56(d) (ECF No. 64); and Plaintiff's Motion to Amend

Complaint to Identify John Does (ECF No. 61).  For the reasons that follow,

Defendants' Motion is granted in part and certain claims are dismissed while others

merit further document discovery.   As the foreign mail restriction claims asserted

against the "John Doe" Defendants survive Defendants' Motion, Plaintiff is also

granted leave to amend his pleading in order to identify the John Does.

## I.     INTRODUCTION

        The Plaintiff is a pro se prisoner housed at the Airway Heights Corrections

Center (AHCC), in Airway Heights, Washington serving a 1392-month (116 years)

exceptional sentence for his numerous 2004 Washington state child-sex abuse

convictions.

        On January 15, 2013, Plaintiff filed the present civil rights action pursuant to

42 U.S.C. § 1983 against 19 individual defendants who work or formerly worked at

ORDER – 1

the AHCC or the Washington State Department of Corrections (DOC) prison system. Plaintiff has filed a separate Motion seeking to identify the four unnamed Doe Defendants, alleged mailroom employees at AHCC, as being Paul Barker, Bonnie Munden, Ronald Doty, and Sergeant Thomas Orth.

The operative Second Amended Complaint asserts First Amendment claims against all of the Defendants.  Plaintiff claims the Defendants participated in the following separate adverse actions in retaliation against him for the content of letters and a manuscript he authored, as well as his filing of grievances and his lawsuit filed in January 2010 regarding 24-hour illumination at AHCC (EDWA Cause No. 09-CV-0389-JPH):

**No. 1**: Plaintiff alleges that in November 2010, Defendants Klemme and "mailroom staff" (Defendants John Does 1-4) unlawfully restricted delivery of incoming mail containing copies of a creative writing manuscript Plaintiff authored. (ECF No. 19 at ¶ 64).

**No. 2**: Plaintiff alleges that on December 17, 2010, Defendant Harrington forwarded to Defendant Richardson a portion of an outgoing email critical of Richardson that Plaintiff had written to his mother. (ECF No. 19 at ¶¶ 7-20, 64)

**No. 3:** Plaintiff alleges that on December 23, 2010, Richardson issued him an infraction based on the content of the foregoing email. (ECF No. 19 at ¶ 65).

**No. 4:** Plaintiff alleges that on January 21, 2011, Defendants Richardson and Hagen unlawfully searched Plaintiff's cell, disrupting his legal papers and personal belongings.  (ECF No. 19 at ¶ 66).

**No. 5:** Plaintiff alleges that on February 27, 2012 Defendant Richardson unlawfully placed him in "solitary confinement." (ECF No. 19 at ¶ 67).

**No. 6:** Plaintiff alleges that Defendants John Does 1-4 unlawfully restricted his incoming mail on five separate dates claiming the content was sexually explicit and Defendants Klemme and Watkins denied his appeals of these restrictions. (ECF No. 19 at ¶ 68).

ORDER – 2

**No. 7:** Plaintiff alleges that Defendants Klemme, Miller-Stout, Watkins, Warner, and John Does 1-4 unlawfully prohibited him from receiving incoming mail written in Norwegian language.  (ECF No. 19 at ¶ 46, ¶ 69).

**No. 8:** Plaintiff alleges Defendants Burke, Brazington, Lawrence, and Stokes unlawfully demoted him from minimum custody to medium custody by characterizing Plaintiff's sentence as "Life Without Parole."  (ECF No. 19 at ¶ 53,¶ 70).

**No. 9**: Plaintiff alleges Defendants Miller-Stout, Davies, Miller, Uttecht, Campbell unlawfully denied his appeals concerning his placement in more restrictive custody.  (ECF No. 19 at ¶ 71).

On January 6, 2014, Plaintiff propounded 39 discovery requests for production to Defendant Maggie Miller-Stout, 7 production requests to Defendant Jeffrey Uttecht, and 7 production requests to Defendant Risa Klemme. (ECF No. 59 at 2).

On February 4, 2014, Defendants filed a Motion for Summary Judgment. (ECF No. 56). Defendants assert they are entitled to summary judgment because (1) Plaintiff has failed to exhaust claims related to the January 21, 2011 cell search; (2) Defendant Warner did not personally participate in the alleged constitutional violation; (3) Plaintiff has failed to establish a prima facie case of First Amendment retaliation; (4) Defendants are entitled to qualified immunity; (5) injunctive relief should be denied because Plaintiff cannot show entitlement to such relief; and (6) Plaintiff should be issued a strike under 28 U.S.C.  § 1915(g) because his claims are frivolous.  (ECF No. 56). Accompanying the Defendants' Motion are a Statement of Material Facts and the requisite form Notice to the Plaintiff  (ECF No. 58) of the requirements for opposing the Motion.  *Woods v. Carey*, 684 F.3d 934, 939–41 (9th Cir. 2012)*; Rand v. Rowland*, 154 F.3d 952, 960–61 (9th Cir. 1998).  Defendants also moved for a protective order and stay of discovery to relieve them of the duty to respond to the Plaintiff's discovery requests until resolution of their Summary Judgment Motion, including the issue of qualified immunity.

ORDER – 3

On February 27, 2014, Plaintiff filed a Motion to Stay pursuant to Fed.R.Civ.P. 56(d) requesting the court to defer any ruling on all issues, except qualified immunity, in the Defendants' Motion until completion of discovery. (ECF No. 69 at 2). Plaintiff claims the discovery he seeks is "instrumental to material issues" in the case which "bear on his ability to respond to a motion for summary judgment." Plaintiff has responded to the Defendants' Summary Judgment Motion in his March 31, 2014 Reply brief in support of the Rule 56(d) continuance. (ECF No. 69).

The court stayed discovery pending review of Defendants' and Plaintiff's motions.

## II.    FACTS

The underlying facts and allegations contained in the Second Amended Complaint pertinent to the matters before the court are incorporated in the discussion of each claim below.

## III.    LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute regarding a material fact is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party. *Id*.

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986) (internal quotation marks omitted). Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007). "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id. (citing Celotex*, 477 U.S. at 323).

If the movant has sustained its burden, the nonmoving party must "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (*citing Anderson*, 477 U.S. at 257 (1986)). Although the nonmoving party need not establish a material issue of fact conclusively in its favor, it may not simply rely on "bald assertions or a mere scintilla of evidence in [its] favor" to withstand summary judgment. *Stefanchik*, 559 F.3d at 929. Indeed, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Electric Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Rather, "the evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255.

The court may construe Plaintiff's verified complaint and opposition as being opposing affidavits for the purpose of ruling on Defendants' motion for summary judgment. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir.2004) ("because [the plaintiff] is pro se, we must consider as evidence in his opposition to summary judgment all of Jones's contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct.").

ORDER – 5

**B.    Qualified Immunity**

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, 555 U.S. 223, 231(2009) *(quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity is 'an immunity from suit rather than a mere defense to liability.' " *Conner v. Heiman*, 672 F.3d 1126, 1130 (9th Cir.2012) (internal quotations and citation omitted).

Determining whether an official is entitled to qualified immunity requires a two-part analysis. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *see also Saucier*, 533 U.S. at 201. If the allegations make out a constitutional violation, the court must also determine whether the right alleged to have been violated was "clearly established." *Saucier*, 533 U.S. at 201. A court determining whether a right was clearly established looks to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Cmty. House, Inc. v. Bieter*, 623 F.3d 945, 967 (9th Cir. 2010) (*citing Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996)). Whether an alleged act is a violation of a federal right and whether the right was clearly established at the time of the violation are pure legal questions for the court. *See Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003). A right is "clearly established" for the purpose of qualified immunity if " 'it would be clear to a reasonable [prison official] that his conduct was unlawful in the situation he confronted' ... or whether the state of the law [at the time of the alleged violation] gave 'fair warning' to [him] that [his] conduct was unconstitutional." *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) (*quoting Saucier*, 533 U.S. at 202).

The objective of the qualified immunity doctrine is to ensure "that 'insubstantial claims' against government officials be resolved prior to discovery and on summary judgment if possible." *Anderson v. Creighton*, 483 U.S. 635, 640 n. 23 (1987) (*citing Harlow*, 457 U.S. at 818–19). As such, district courts generally stay discovery until the issue of qualified immunity is resolved. *See Crawford–El v. Britton*, 523 U.S. 574, 598 (1998); *Harlow*, 457 U.S. at 818; *Dimartini v. Ferrin*, 889 F.2d 922, 926 (9th Cir.1989). Nonetheless, discovery as to the issue of qualified immunity may be necessary where the parties dispute the actions taken by defendants that form the basis of the plaintiff's claim. *See Anderson*, 483 U.S. at 646 n. 6.

Although it is often beneficial to approach the two-part inquiry in the sequence prescribed above, it is not mandatory. *Pearson*, 555 U.S. at 231–32. A district court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Id*. The court may grant defendants qualified immunity at any point the court answers either prong of the inquiry in the negative. *See e.g., Tibbetts v. Kulongoski*, 567 F.3d 529, 536–39 (9th Cir. 2009) (bypassed the first prong and granted defendants qualified immunity because plaintiff's due process right was not clearly established at the time of alleged violation).

## IV.  DISCUSSION

Each of Plaintiff's claims are primarily cast under the overarching theory of First Amendment retaliation. Under the First Amendment, prison officials may not retaliate against prisoners for initiating litigation or filing administrative grievances. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005). A viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) the inmate's protected conduct and that the adverse action (4) chilled the inmate's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate penological

1  purpose. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir.2009) (*quoting Rhodes*, 408
2  F.3d at 567–68).

3       Plaintiff must establish a nexus between the alleged retaliatory act and the
4  protected activity, *see Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000),
5  and must show he suffered more than minimal harm, *Rhodes*, 408 F.3d at 568 n. 11.
6  The plaintiff bears the burden of pleading and proving the absence of legitimate
7  correctional goals for the conduct of which he complains. *Pratt v. Rowland*, 65 F.3d
8  802, 806 (9th Cir.1995).

9       Case law dictates that such claims must be examined "with skepticism and
10 particular care. . . ."  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).
11 "Retaliation claims by prisoners are 'prone to abuse' since prisoners can claim
12 retaliation for every decision they dislike." *Graham v. Henderson*; 89 F.3d 75, 79
13 (2d Cir. 1996) (*quoting Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

14      Reading the Second Amended Complaint liberally, Plaintiff's allegations also
15 raise related First Amendment interference with mail and privacy claims. The court
16 also addresses these claims below.

17 **A.     Incoming Mail Censorship Claims** (Alleged Adverse Action Nos. 1, 6, 7)
18      A prison official's unreasonable interference with an inmate's mail may
19 violate his First Amendment right to free speech, which includes the right to be free
20 from unjustified government interference.  The Supreme Court has held that  "[t]he
21 addressee as well as the sender of direct personal correspondence derives from the
22 First and Fourteenth Amendments a protection against unjustified governmental
23 interference with the intended communication." *Procunier v. Martinez*, 416 U.S.
24 396, 408-409 (1973), *overruled on other grounds, Thornburgh v. Abbott*, 109 S.Ct.
25 1874, 1881 (1989). Interference with prisoner mail must "be reasonably related to
26 legitimate penological interests." *Thornburgh v. Abbott*, 109 S.Ct. 1874, 1876
27 (1989).
28

ORDER – 8

1.    **Restriction of Sexually Explicit Mail (Alleged Adverse Action Nos. 1, 6)**

*a. Background*

Pursuant to Washington state DOC Policy 450.100 governing inmate mail, inmates are prohibited from receiving or sending mail "that is sexually explicit." (ECF No. 57 at 80). The policy specifically defines the term "sexually explicit." *Id.* at 81.  If any portion of a prisoner's incoming or outgoing mail is rejected, the policy provides that mailroom staff will provide written notice to the prisoner and sender stating the reason for the rejection.  The prisoner may appeal the restriction of incoming mail to the Superintendent/designee (here Defendant Risa Klemme) who is to notify the inmate of whether the restriction is affirmed or reversed.  *Id.* at 73.

The Second Amended Complaint alleges that sometime in November 2010, AHCC mailroom staff, Defendants John Does 1-4, restricted delivery of incoming mail from Plaintiff's creative writing instructor, containing copies of a creative writing manuscript that Plaintiff authored. (ECF No. 19 at ¶ 64).  Plaintiff contends the manuscript "express[ed] opinions regarding the Washington Department of Corrections." *Id.* 19 at 6.  The mail was restricted initially on grounds that it contained photo copies that did not meet the requirements of DOC Policy 450.100.  Plaintiff appealed this restriction to Defendant Risa Klemme, who denied the appeal.  Plaintiff alleges that Ms. Klemme "would not articulate a reason for not allowing me to have my mail." (ECF No. 19 at 6).  However the Mail Restriction Notice states that Ms. Klemme determined the correspondence contained "sexually explicit content re: children." (ECF No. 57 at 86).

Plaintiff further alleges the mailroom staff continued their "campaign of harassment," restricting his incoming mail sent by his mother on seven other occasions (2/27/2012, 3/5/2012, 3/7/2012 (2), 4/24/2012(2), and 5/5/2012).  Plaintiff claims this mail contained "editing drafts of his novels," and that the Defendants restricted it because they "objected to the opinions expressed therein," and "falsely" concluded that "the work was sexually explicit."  (ECF No. 19 at ¶ 31).  The Second

ORDER – 9

Amended Complaint alleges his appeals were all denied by Defendant Klemme. *Id.*
At § 32.  However, in Plaintiff's First Amended Complaint he admitted that he
successfully appealed two of the mail rejections which is confirmed by the record of
mail rejection notices filed by Defendants.  (ECF No. 57 at 59).  The Second
Amended Complaint also alleges Plaintiff appealed the restriction to Defendant
Michael Watkins in Olympia making "clear that my writing was not sexually
explicit," but Watkins allegedly upheld the restriction "despite the absence of
sexually explicit" material.  (ECF No. 19 at ¶ 34).

### b. Discussion

A prisoner's First Amendment right to be free from unjustified government
interference with his mail precludes the arbitrary censorship of his incoming mail.
However, no constitutional right is violated when prison staff refuse to deliver
sexually explicit materials to an inmate because it is reasonably related to
penological interests-- interests which are even heightened when involving a sex
offender. *Bahrampour v. Lampert*, 356 F.3d 969, 979 (9th Cir. 2004).  Though
Plaintiff apparently disagrees with the prison's determination that the mail
constituted "sexually explicit" materials, courts "necessarily confer a certain degree
of discretion on prison authorities" to determine what constitutes impermissible
sexually explicit material. *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (courts
must accord prison administrators wide-ranging deference in the adoption and
execution of policies and practices that, in their judgment, are needed to preserve
institutional order, discipline, and security).   Moreover, even if the officials did not
follow prison policy, this does not, in itself, amount to a constitutional violation.
*Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009).

Here, to defeat summary judgment on these mail censorship claims, Plaintiff
must demonstrate that there is a genuine issue of material fact regarding the
application of the regulations to the materials. *See, e.g. Far Out Prods., Inc. v.
Oskar*, 247 F.3d 986, 992 (9th Cir. 2001). Defendants' evidence, including the Mail
Rejection Notices and Declaration of Risa Klemme, adequately demonstrate

Plaintiff's mail was restricted due to legitimate penological interests and that this decision was upheld by prison officials on multiple levels. Plaintiff has failed to produce any evidence in opposition on this claim, and his Rule 56(d) Motion does not demonstrate how additional discovery might reveal the material was baselessly rejected. Plaintiff's bare allegations and vague assertions for the need for additional discovery on this claim are not enough and the court is not obligated to allow additional discovery before ruling on the summary judgment motion.

## 2.   <u>Refusal to Deliver Incoming Mail Written in a Foreign Language (Alleged Adverse Action No. 7)</u>

### a. Background

The DOC mail policy allows withholding "mail in a foreign language with contents not understood by the inspecting staff, when reasonable efforts to have the mail interpreted have been unsuccessful." (ECF No. 57 at 80). Correspondence may be sent by the mailroom for translation services "per the available contract at the discretion of the Mailroom Supervisor." *Id.*

Plaintiff contends that in 2012 the Defendant mailroom staff members (John Does 1-4), Risa Klemme, Maggie Miller-Stout, Michael Watkins, Bernard Warner continued their "harassment" of Plaintiff by "suddenly," and on five occasions between May 3, 2012 and June 11, 2012, restricting incoming correspondence from his overseas mother and father containing contents written in Norwegian. Plaintiff alleges the censorship of his mail was to retaliate against him for his "protected speech opinions and efforts to protect [his] rights through grievances and complaints." (ECF No. 19 at ¶ 69). As circumstantial evidence of retaliation Plaintiff claims that in his 8 prior years of incarceration, his Norwegian mail was never restricted and that other inmates continue to receive foreign language mail, including inmate Kerr who receives mail in Norwegian. Plaintiff alleges Defendants Maggie Miller-Stout, Risa Klemme, and Michael Watkins participated in this retaliation by denying his appeals of the mail restrictions. DOC Secretary Defendant Bernard Warner is also included in this claim based on the allegation that

ORDER – 11

he assigned Defendant Watkins to respond to Plaintiff's letter requesting an investigation of Watkins "for colluding in a campaign of harassment...through subversion of my...foreign language mail." (ECF No. 19 at ¶¶ 42-43).

### b. Discussion

It is not disputed by Plaintiff or Defendants that Plaintiff's mail contained language written in a foreign language and Plaintiff makes no challenge to the validity of the DOC's mail policy itself. The issue is whether the reviewing mailroom staff merely used the policy as a pretext to prevent Plaintiff from receiving his mail and to retaliate against him for his prior complaints, thus violating his First Amendment rights.  Plaintiff's allegations regarding the sudden enforcement of this policy against his mail, the failure to follow the mail policy, and the timing of the censorship alleges facts giving rise to a colorable suspicion of a violation of his First Amendment right against unjustified interference with his mail and based upon retaliation.  Plaintiff states in his Rule 56(d) Motion that he seeks additional discovery regarding whether Defendants complied with the mail policy in making efforts to translate the mail and also records of other inmate foreign mail restrictions.

Although not addressed by the Ninth Circuit, the Seventh Circuit has found that the summary exclusion of foreign language material is unconstitutional. *Kikumura v. Turner*, 28 F.3d 592 (7th Cir.1994)("summary exclusion of foreign language material is unconstitutional"); *see also, Thongvanh v. Thalacker*, 17 F.3d 256, 259 (8th Cir.1994)(refusal to authorize translations of the plaintiff's incoming letters from Lao to English while excepting incoming German and Spanish correspondence from the prison's "English only" rule violated his First Amendment and equal protection rights); *Ramos v.. Lamm*, 639 F.2d 559, 581 (10th Cir.1980)(same); *but see Spitsyn v. Morgan*, No. C04–5134, 2008 WL 714095, at *5 (W.D.Wash. Mar. 14, 2008) (granting summary judgment to defendants and upholding Washington DOC mail policy rejecting incoming mail written in a foreign language given the reasonable staff effort made to secure volunteer

ORDER – 12

translation services).

In support of their Motion for Summary Judgment based on qualified immunity, Defendants do not address the Plaintiffs' allegations of selective enforcement or the lack of attempt to secure a translation. Defendants instead rely solely upon the Declaration of Ms. Klemme which merely asserts that she upheld restrictions based upon the mails' content in a foreign language.

Issues of fact exist regarding whether the foreign language mail policy was selectively applied; what, if any, efforts were made to seek a translations; and the protocol therefore; and whether the policy as applied amounted to a de facto ban on all Plaintiff's incoming non-English mail from family members. Defendants have not established that the decision would have been the same in the absence of protected speech. These issues all preclude summary judgment on the defense of qualified immunity. Accordingly, Plaintiff's foreign language mail claims (interference with mail and retaliation) against the mailroom staff merit document discovery.

Plaintiff's claims against Defendants Miller-Stout, Klemme, and Watkins all appear to arise out of the denial of his inmate grievance appeals. The only allegation against Warner is that Plaintiff sent him a letter requesting official investigations. The Second Amended Complaint fails to state a claim for relief against these Defendants because one cannot state a constitutional claim based on his dissatisfaction with the grievance process. Where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act, the defendant cannot be liable under § 1983." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999). The reason for this rule is that there must be active unconstitutional behavior. Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.* Moreover, Plaintiff's general allegations speculating of "collusion" in alleged retaliation, without any factual support, are insufficient. Plaintiff's foreign mail restriction

ORDER – 13

claims against Defendants Miller-Stout, Klemme, Watkins and Warner fail to state a claim and are dismissed.

**B.   Transmission of Outgoing Mail to Another Person (Alleged Adverse Action No. 2)**

    **1.   Background**

The DOC mail policy informs inmates that the prison staff inspecting inmate mail are "[d]esignated facility staff" who are authorized "to inspect and read incoming and outgoing mail" for two discrete reasons:

> to prevent:
> 1.   Receiving or sending contraband or any other material that threatens the security and order of the civility through the mail; and
> 2.   Criminal activity.

(ECF No. 57 at 67).   Rejected outgoing mail is reviewed "by the Superintendent and Secretary/designee..." *Id*.

On December 17, 2010 Defendant Craig Harrington, an AHCC sergeant allegedly screening inmate email, shared with a correctional sergeant, Defendant Richardson, an email message Plaintiff had written to his mother.  Plaintiff's email described Mr. Richardson as a "man with a complete punk reputation..." and called Plaintiff's minor infraction process "bull-shit."  (ECF No. 65, Ex. 2).  Sgt. Harrington prefaced his message to Mr. Richardson with: "Just thought I would share how much your [sic] appreciated by the offenders.  My [sic] in the mailroom now."  (ECF No. 65, Ex. 2).

On December 23, 2010, Defendant Richardson infracted Plaintiff based upon the December 17, 2010 email for violating WAC 137-28-220(202), "abusive language, harassment or other offensive behavior directed to or in the presence of staff, visitors, inmates, or other persons or groups."  Plaintiff contested the infraction.  The hearing officer found Plaintiff guilty. *See* Cause No. 09-CV-389, ECF No. 47 at 5.  Plaintiff filed an appeal and the infraction was overturned as the described event did not support a violation of WAC 137-28-220(202).  *See* ECF No. 57 at 49 (Ex. 2)(Richardson Decl.)("I later learned that an infraction for this type of behavior is not permitted by DOC policy.").  Apparently, Plaintiff had served six

ORDER – 14

days of a cell confinement sentence before the infraction was overturned.  (ECF No. 12).

On January 7, 2011, Plaintiff filed a grievance alleging Sergeants Harrington and Richardson were retaliating against him for his opinions in violation of the First Amendment.  The Level I investigation concluded there was no misconduct and that staff "did not know that the mail policy allowed for such comments."  (ECF No. 57 at 203).  Plaintiff appealed the decision stating he was "satisfied" Richardson was not aware of the policy, but hoped that mailroom staff would be "inform[ed] of any relevant policies that ensure certain confidentialities regarding inmate correspondence."  *Id*. at 205.  The prison's February 17, 2011 response stated "the remedy you suggest has already been done" and indicated that Plaintiff had been interviewed by CUS Biddulph on 2/14/11 to review Plaintiff's concerns.  *Id*.

The Second Amended Complaint alleges Defendants Harrington and Richardson "collud[ed] to penalize [him] for opinions expressed to [his] family in e-mail, and which action caused [him] to suffer emotional stress and a chilling of [his] exercise of protected speech..."  (ECF No. 19 at ¶ 65).

## 2.    Discussion

It is important to recognize the precise nature of the conduct at issue in this claim.  Plaintiff does not challenge the DOC policy permitting the inspection of his correspondence nor does he contend his email to his mother was restricted.  If Plaintiff's First Amendment rights were abridged, it would be because of the deterrent or "chilling" effect upon free expression caused by Harrington's less than discrete handling of the correspondence, i.e. his transmittal of the email 1) to a prison official allegedly not authorized to inspect and read mail; and 2) for  reasons unrelated to security or suspected criminal activity.   Defendants offer no other justification for Harrington's conduct than can be inferred from his message suggesting at best, a desire to gossip or at worst, to retaliate against the Plaintiff due to its negative content.

Though the Supreme Court has upheld the censorship of mail for legitimate

penal interests, prison officials are not entitled to read all of an inmate's outgoing mail out of idle curiosity or animus without intruding on an inmate's First Amendment rights. *See, e.g., Riley v. Kurtz*, 194 F.3d 1313 (6th Cir. 1999) (unpublished)(prison guard read inmate's legal mail to determine whether the inmate had named him a defendant in a civil rights action; the court held that a "capricious interference" with a prisoner's mail based upon a guard's personal prejudices was clearly established by 1986 and violates the First Amendment). The cases also state that the right to censor or forward inmate mail does not extend to publicizing private correspondence to a third party. *See Trudeau v. Wyrick*, 713 F.2d 1360, 1366 (8th Cir.1983)(prison officials may have had the right to intercept letter from plaintiff, a lay minister, to prisoner, but that interest did not extend to the letter's dissemination to the bishop of plaintiff's diocese); *Gassler v. Wood*, 14 F.3d 406, 408 n. 5 (8th Cir.1994)(warning that had prison officials shared correspondence with "unauthorized persons–for example, with a newspaper reporter or a prisoner's business rival--the situation might be different."). In *Jolivet v. DeLand*, 966 F.2d 573 (10th Cir.1992), a prison employee revealed personal correspondence between the plaintiff and his girlfriend to another prisoner. The Tenth Circuit upheld the magistrate judge's decision that the inmate had a First
Amendment privacy interest creating "a reasonable expectation that [his] innocent letters w[ould] not be used for general investigative purposes," as well as the inmate's award of $250 in emotional distress damages.

The Defendants' Motion for Summary Judgment on the dissemination of mail claim contains no legal analysis and addresses it in a single cursory sentence, citing this court's second screening Order (ECF No. 15), and stating that "although it may have been unprofessional," it "did not violate Plaintiff's constitutional rights.". (ECF No. 56 at 10). The court's second screening Order did not analyze this First Amendment interference with mail/privacy issue. Defendants' discussion of qualified immunity also ignores this claim.

It is clear that a person would be "far more circumspect in penning the

ORDER – 16

contents of a personal letter" that might be read without cause by anyone working in the prison, than in one that might be read by a few designated mailroom staff members for valid penological reasons. *Nakao v. Rushen,* 635 F.Supp. 1362, 1365 (N.D.Cal. 1986). Fear that information may be disclosed to third persons for any reason beyond the scope of the DOC policy has a chilling effect on First Amendment rights. The court concludes that Plaintiff has stated a viable First Amendment claim on which relief could be granted against Mr. Harrington. Mr. Harrington would not be entitled to qualified immunity as the right to be free from arbitrary mail searches was clearly established in 2010. (ECF No. 56 at 17-18). Accordingly, Defendants' Motion for Summary Judgment is **DENIED** as to Plaintiff's outgoing mail claim against Defendant Harrington.

## C.    Infraction Based Upon Content of Outgoing Mail (Alleged Adverse Action No. 3)

Plaintiff claims that Defendant Richardson retaliated against him in violation of his rights under the First Amendment when he disciplined Plaintiff on December 23, 2010 based upon the disparaging remarks contained in the email which Plaintiff intended only for his mother, but which Defendant Harrington furnished to Richardson.

Although the "filing of unfounded charges d[oes] not give rise to a per se constitutional violation actionable under section 1983," *Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir.1986), *cert. denied*, 485 U.S. 982 (1988), a § 1983 claim may stand when the false charges are allegedly brought in retaliation for an inmate's exercise of his substantive constitutional rights. *See Franco v. Kelly*, 854 F.2d 584, 589–90 (2d Cir.1988). It is well settled that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). The First Amendment's guarantee of freedom of speech provides protection from censorship of a prisoner's outgoing mail, *Procunier v. Martinez*, 416 U.S. 396, 405–06 (1974) and prison officials may not punish an

inmate for statements in outgoing mail protected by the First Amendment. *Brooks v. Andolina*, 826 F.2d 1266, 1268 (3d Cir.1987).  "[U]nflattering or unwelcome opinions or factually inaccurate statements" in an inmate's outgoing mail are protected by the First Amendment. *Martinez*, 416 U.S. at 413

Plaintiff's claim is virtually identical to *McNamara v. Moody*, 606 F.2d 621 (5th Cir.1979), *cert. denied*, 447 U.S. 929 (1980). In *McNamara*, an inmate wrote a letter to his girlfriend stating that a mail room clerk "while reading mail, engaged in masturbation and 'had sex' with a cat." *Id.* at 623. A prison official returned the letter and warned that any similar future correspondence would result in disciplinary action. The Fifth Circuit found that although the remarks were "coarse and offensive," the official's refusal to mail the letter violated *Martinez. Id.* at 624. The court rejected the argument that "to allow letters like this would result 'in a total breakdown in prison security and discipline [,]' " noting the argument was "similar to the contentions made by prison officials in Martinez and found unpersuasive by the Supreme Court." *Id*. In response to the argument that the inmate could have been punished if the remarks had been "made orally to prison guards, face to face," the court stated: "This may be so; we need not decide it.
These remarks were in writing and were directed toward the inmate's girlfriend, not the prison staff." *Id.*

Such is also the case here where the Plaintiff's (even less offensive) offhand remarks were directed to his mother, not prison staff. *See also, Loggins v. Delo*, 999 F.2d 364, 367 (8th Cir.1993); *Brooks v. Andolina*, 826 F.2d 1266, 1268 (3rd Cir.1987).  The court concludes Plaintiff has alleged a violation of constitutional right and the right at issue was clearly established under *Procunier v. Martinez.*  A reasonable official would have understood that punishing an inmate for the unflattering content of personal correspondence directed to another was unlawful. Defendant Richardson is not entitled to qualified immunity.

Defendant's Motion for Summary Judgment as to the December 23, 2010 retaliation claim against Defendant Richardson is **DENIED**.

ORDER – 18

**D.    January 21, 2011 Cell Search (Alleged Adverse Action No. 4)**

   **1.    Background**

On January 20, 2011, Plaintiff received the initial response denying his January 11, 2011 grievance which had asserted Defendants Harrington and Richardson had retaliated against him for the content of his December 17, 2010 personal email to his mother.  The Second Amended Complaint alleges that the next day, January 21, 2011, Defendants Richardson and "his accomplice" Hagen searched Plaintiff's cell, disrupting his legal papers and personal belongings.  (ECF No. 19 at ¶ 66).  Plaintiff alleges Richardson and Hagen "threatened to infract" him for "confronting them with [his] concerns" about the cell search. Plaintiff claims he made informal requests of prison staff to investigate the cell search.  (ECF No. 19, ¶16- 17).

Defendants provide evidence that on January 22, 2011 Plaintiff filed an initial grievance concerning the search of his cell claiming that Richardson and Hagen were "continuing to retaliate against him for filing grievances..."  (ECF No. 57 at 199).  In the grievance, Plaintiff requested "please seriously investigate Sgt. Richardson and Officer Hagen for unlawfully retaliating against me..."  Two days later, on January 24, 2011, Plaintiff sent a kite withdrawing the jail search grievance stating "I am concerned the grievance process will be a difficult remedy...". (ECF No. 57 at 201).  Defendants maintain that Plaintiff failed to exhaust his administrative remedies with regard to this retaliation claim.  The court also notes that its prior Order also warned Plaintiff that it appeared from the face of his prior pleading that Plaintiff had not exhausted this claim through the proper channels. (ECF No. 15 at 5, 7)("...because Plaintiff admits he did not grieve this allegedly retaliatory conduct, he may not pursue a retaliation claim against Defendant Richardson in this civil rights action.").

This issue has been fully briefed and Plaintiff has not demonstrated any discovery is necessary prior to the court's determination of the issue. See ECF No. 69 at 14-15 (Plaintiff's Response).

ORDER – 19

### 2.    Discussion

The Prison Litigation Reform Act (PLRA) directs that "[n]o action shall be brought with respect to prison conditions" until a prisoner exhausts his available remedies. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A remedy is not exhausted if the prisoner fails to follow prison procedures for pursuing administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 95 (2006). The exhaustion requirement is an affirmative defense, which defendant bears the burden of proving. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Moreover, exhaustion of administrative remedies under the PLRA is a question of law for the Court to decide.

The plain language of the PLRA requires that prisoners exhaust only available remedies. 42 U.S.C. § 1997e(a) ("No action shall be brought ... until such administrative remedies as are available are exhausted." (emphasis added)). It follows that if an administrative remedy is not available, then an inmate cannot be required to exhaust it. To be "available," a remedy must be "capable of use for the accomplishment of a purpose." *See Booth v. Churner*, 532 U.S. 731, 737 (2001) (*citing Webster's Third New Int'l Dictionary* 150 (1993)).  Failure to exhaust under the PLRA is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 212 (2007). Defendants thus bear the burden of asserting and proving that the plaintiff did not utilize administrative remedies. *Id.* Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him as a result of intimidation by prison officials.

Plaintiff admits he did not use the formal grievance process to complain of the alleged retaliatory cell search.  However, he claims the withdrawn grievance he initially lodged was "redundant" of his grievance filed January 10, 2011 claiming that Defendants Richardson and Harrington had violated the First Amendment in connection with the handling of his December 17, 2010 email communication.   In some circumstances, prisoners need not continue to file repetitive grievances about the same issue, where earlier grievances give prison officials "a fair opportunity to address the problem..." *Johnson v. Johnson*, 385 F.3d 503, 521 (5th Cir. 2004)

ORDER – 20

(inmates not expected to file repeated grievances reminding prison officials that he remained subject to attack (virtually every day) in the general population); *Moore v. Bennette*, 517 F.3d 717 (4th Cir. 2008)(inmate was not required to grieve the inadequate treatment of his gout as it was part of the same pattern of the intentionally substandard medical care he had complained of with regard to his Hepatitis C and pancreatic condition).

Although Plaintiff's January 10, 2011 grievance mentions terms such as the "First Amendment" "retaliation" and Defendant Richardson, it concerned discrete incidents involving the handling of Plaintiff's email by Defendants Harrington and Richardson. It contained no assertion of any alleged ongoing condition or retaliation by Richardson and others, which might have prompted the prison to continue its investigation. As each discrete instance of actionable First Amendment retaliation must be exhausted, Plaintiff's January 10, 2011 grievance does not suffice concerning the cell search. *See, e.g., O'Connor v. City of Newark*, 440 F.3d 125 (3d Cir. 2006) (disallowing aggregation of discrete retaliatory acts for purposes of statute of limitations when actions related to § 1983 First Amendment retaliation claim).

In addition, no exception to the exhaustion requirement applies here. Although Plaintiff alleges he was told on an unspecified date by a unit supervisor that filing complaints against Richardson "would result with more retaliation," (ECF No. 19, ¶ 14), Plaintiff does not claim administrative remedies were not "available" or that any threat actually deterred him from lodging the grievance or caused him to withdraw the cell search grievance. In fact, in the days immediately after the cell search Plaintiff continued to use the grievance process to appeal his other complaints against Richardson. (ECF No. 57 at 205)(February 2, 2011 appeal of grievance regarding email communication). In addition, his alleged informal contact with Department of Corrections and AHCC officials asking them to investigate the incident (ECF No. 19 at ¶ 16) is inconsistent with any fear of retaliation for seeking to comply with the administrative process.

ORDER – 21

By his own admission, Plaintiff did not exhaust his administrative remedies in regard to the alleged retaliatory cell search on January 21, 2011. Accordingly, Defendants' Motion for Summary Judgment as to this claim is **GRANTED**.

**E.    February 27, 2012 Placement in Solitary Confinement (Alleged Adverse Action No. 5)**

**1. Background**

Plaintiff alleges that on February 27, 2012 Defendant Richardson placed him in "solitary confinement for a specious investigation of materials I was authorized to have in response to my protected speech and right to file grievances and complaints...in violation of the First Amendment..." (ECF No. 19 at ¶ 67).   Plaintiff alleges this adverse action was also "precipitated by mailroom staff" who "ordered a search for child pornography." *Id*. at 22.  The Second Amended Complaint asserts that prison staff seized a folder from his cell labeled "miscellaneous," containing "innocuous items" maintained as research for "his novels' fictional elements."  *Id*. at ¶ 24.  Plaintiff claims the cell search and subsequent investigation during which he was placed in solitary "occurred only after my TRO, grievances and complaints" (ECF No. 19 at ¶ 12).

Plaintiff's allegations do not attempt to link his placement in solitary to any particular grievances or "complaints," however the "TRO" (temporary restraining order) discussed is a reference to a motion Plaintiff filed in separate litigation commenced on January 21, 2010 regarding 24-hour illumination at AHCC.  Cause No. 09-CV-0389-JPH.  In January of 2011 (over one year prior to his placement in solitary) Plaintiff filed a Motion for Temporary Restraining Order seeking to enjoin the Defendants therein (and others including Richardson) from retaliating against him for his litigation correspondence and grievances. The Plaintiff's request for TRO was denied on February 23, 2011.

Defendants contend the Plaintiff's cell was searched after "mailroom notified unit staff that a mail restriction involved sexually explicit material."  (ECF NO. 56 at 12).  Defendants indicate the items seized from Plaintiff's cell included: "a coding

ORDER – 22

system; a hand written lined piece of paper with the velocity and weight of various rounds of ammunition; an article on smart phones and how they are the most lethal weapon that you can get inside a prison; a flyer for a home for sale or to rent in Europe; a map with specific routs marked in Europe; a detailed article on key exchange or cryptography for online communications; an essay on brainwashing; a report on coercive persuasion; typed documents with quotations concerning sexual acts with minors; and a few drawings of children."  (ECF NO. 56 at 12).  Plaintiff was released from solitary confinement on March 14, 2012 and he claims that 8 of the items were returned to him.  (ECF No. 19, ¶ 28).

### 2. Discussion

Retaliation is not sufficiently alleged and cannot be proven by simply showing that a defendant prison official took adverse action after he knew the prisoner had engaged in other constitutionally protected activity. Here any inference of retaliation is too attenuated to support a prima facie case of retaliation.  The mere fact adverse action occurred *one year* after his TRO was resolved is insufficient to support a claim of retaliation.  Plaintiff admits in his Second Amended Complaint that during "much of 2011," "mailroom staff appeared to abate their harassment..." (ECF No. 19 at ¶ 21).  There are no specific, nonconclusory factual allegations which would support a plausible causal link between Plaintiff's placement in solitary confinement and his protected speech in this instance.   Because of the generic language used in Plaintiff's Second Amended Complaint, Plaintiff's allegations regarding his placement in solitary confinement do not state a plausible § 1983 claim, and they are dismissed on that basis.  Accordingly, the court need not address qualified immunity on the § 1983 solitary confinement claim.

### F.  August 2012 Increased Custody Classification (Alleged Adverse Action Nos. 8, 9)

#### 1.  Background

Plaintiff's security level had been set at minimum ("MI3") for approximately six years, from May 31, 2006 to August 2012. On July 31, 2012, the Washington

state court of appeals affirmed the Defendant's consecutive sentences totaling 1392 months in prison on 51 child-sex abuse convictions. In August 2012, his classification was changed to medium custody. Plaintiff claims this classification change was motivated by the retaliatory actions of Defendants Burke, Brazington, Lawrence, Stokes, Miller-Stout, Davies, Miller, Uttecht and Campbell "because they object to my protected speech opinions and efforts to protect my rights through grievances and complaints..." (ECF No 19, ¶ 70, 71).

As circumstantial evidence of his custody classification claim, Plaintiff alleges that on August 21, 2012, Plaintiff asked Defendant Genevieve Burke, an AHCC Corrections Counselor, whether a conference call with an attorney had been scheduled. Plaintiff alleges she responded in a sarcastic tone: "Grenning? I don't have the time right now, we're too busy with your foreign mail. Just keep writing books and see where it gets you." (ECF No. 19 at ¶ 49).

The Second Amended Complaint alleges the next day Ms. Burke convened a meeting of the "Facility Risk Management Team" (FRMT), which is charged with addressing offender custody designations and governed by DOC policy 300.380, a copy of which has been provided by Defendants. Placement recommendations of the FRMT are reflected in a document called the "Custody Facility Plan." (ECF No. 57, Ex. 5). It is undisputed that Plaintiff, Ms. Burke, and three other AHCC Corrections Counselors, Defendants Rita Cziglenyi (Brazington), Reuben Stokes, and Earnest Lawrence participated in the meeting. The DOC policy stated that "LWOP [life without parole] offenders will not be assigned [to minimum custody] except under extraordinary circumstances..." (ECF No. 57 at 137).   Ms. Burke and the FRMT recommended Plaintiff's demotion from minimum to medium custody and his transfer to a medium custody unit. In Plaintiff's "Custody Facility Plan" Ms. Burke stated:

> Met with Offender Grenning for a facility plan change to address appropriate custody.  Offender Grenning is currently MI3 custody, 34 years old with an [Expedited Release Date] of 2096.  At his ERD he will be 118 years old, this is beyond the life expectancy of a male inmate.  Per 300.380, he is not eligible for MI3 custody.  I recommend he is demoted to medium custody, with an

ORDER – 24

[Life Without Parole] override, and transferred to a medium custody unit.  No targets for lower levels of custody due to policy requirements...No targets for lower level of custody due to sentence structure.

(ECF No. 57 at 149).

The next day (August 23, 2012), the acting AHCC custody program manager, wrote that he did not concur with the recommendation of the FRMT team and recommended a "Murder override."  *Id*.

Plaintiff alleges that other Defendants "colluded to uphold the retaliatory placement...in more restrictive custody."  (ECF No. 19 at ¶ 21).  On August 24, 2012 Defendant Nancy Davies, a Correctional Specialist 4 at the state DOC office who reviews classification processes, agreed with the recommended demotion to medium custody, but recommended that he be retained at AHCC:

Offender Grenning is serving a CCB sentence of 104 years 24 months and will be 118 years old at the time of his current ERD.  Per 300.380, he is serving a term equivalent to LWOP.

(ECF No. 57 at 150).

On August 30, 2012, Defendant Jeff Uttecht, an Acting Deputy Director for the state DOC, approved the decision to demote Plaintiff to medium custody. *Id*.

Plaintiff also alleges that an office assistant at the state DOC office, Lori Miller, participated in the collusion.  Ms. Miller's name appears on the Custody Facility Plan, however there are no facts explaining what, if any, role she had in the decision to reclassify Plaintiff.  On August 30, 2012, Plaintiff alleges Ms. Burke told him to "pack your stuff" and transferred him a medium custody unit, where he alleges "violence tends to be higher..."  (ECF No. 19 at ¶ 54).

Plaintiff alleges he wrote the AHCC Superintendent, Defendant Miller-Stout, and Correctional Specialist John Campbell claiming the Defendants had misinterpreted and misapplied DOC Policy by characterizing his sentence as "Life Without Parole" (¶ 53) and that his good behavior record merited his retention in minimum custody  (ECF No. 12 at ¶ 87).  His appeals were denied.

**2.    Discussion**

Plaintiff's retaliation claim cannot be maintained against the Defendants based

upon the decision to reclassify Plaintiff.  Other than his transfer to a different unit of AHCC, Plaintiff does not allege that he has suffered any consequences from increased security level nor does the regulation of inmates serving sentences exceeding their life have a "chilling effect" on the exercise of constitutional rights. Moreover, mere general allegations speculating of "collusion" in *Ms. Burke's* alleged retaliation are insufficient to state a claim against  Defendants Brazington, Lawrence, Stokes, Miller-Stout, or the state DOC officials/staff, Defendants Davies, Miller, Uttecht and Campbell. *See also*, this court's prior Order, ECF No. 15 at 15-16 (discussing Plaintiff's First Amended Complaint and finding the Plaintiff had failed to state a plausible claim of retaliation).  Plaintiff's threadbare recitals of the elements of a First Amendment cause of action are insufficient to support the claim that protected activity by Plaintiff was a motivating factor in the alleged role of these eight Defendants in the custody classification decisionmaking.

Assuming Plaintiff has sufficiently pled a retaliatory motive against Ms. Burke, the claim is disposed of based on the Defendants' evidence that Plaintiff's reclassification had a legitimate justification pursuant to a prison policy regulating classification of inmates with sentence structures exceeding the predicted life of the inmate and Plaintiff's age, sentence structure, and expected release date of age 118. *See e.g., Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) (after plaintiff satisfies his burden of showing that defendant's conduct was motivated by plaintiff's constitutionally protected conduct, burden shifts to defendant to establish that the decision would have been no different even in the absence of the protected conduct). Defendants have demonstrated there was a valid basis for reclassifying Plaintiff which was independent of any protected activity by Plaintiff.

The Court of Appeals for the Second Circuit in *Scott v. Coughlin* addressed this issue:

> Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have

occurred. Plaintiff has the initial burden of showing that an improper motive
played a substantial part in defendant's action. The burden then shifts to
defendant to show it would have taken exactly the same action absent the
improper motive.

344 F.3d 282, 287-88 (2d Cir. 2003). Defendants have negated the "because of"

second element (causation) as well as Plaintiff's need for further discovery because

regardless of any possible retaliatory motive, the DOC policy provided a proper

basis for the reclassification decision. It would be entirely speculative for any

factfinder to conclude the prison personnel would not have taken the same

classification action of Plaintiff regardless of any motive it had to punish him for

protected activity. *See Abrams v. Walker*, 307 F.3d 650, 654 (7th

Cir.2002)(explaining "even if a defendant was 'brimming over with unconstitutional

wrath' against a § 1983 plaintiff, that plaintiff cannot prevail unless he or she

establishes that the challenged action would not have occurred 'but for' the

constitutionally protected conduct.").

Plaintiff has failed to establish a triable issue of fact with respect to his

classification retaliation claim against Defendants Burke, Brazington, Lawrence, and

Stokes, Miller-Stout, Davies, Miller, Uttecht, and Campbell. Therefore, these

Defendants are entitled to summary judgment on that claim.

## G.    Injunctive Relief

Defendants also move for dismissal of Plaintiff's claims for injunctive relief

which are set forth on page 23 of the Second Amended Complaint. Plaintiff seeks

an injunction ordering the Defendants to:

> 1. "Cease all retaliation and campaign of harassment against [P]laintiff."
> 2. "Cease the practice or policy of denying [P]laintiff mail in a foreign
> language."
> 3. "Restore [P]laintiff to the less restrictive minimum custody which he held
> for seven years and did nothing to forfeit."
> 4. "Expunge any record of infractions or sanctions leveled against [P]laintiff
> by [D]efendants or their agents that are related to their campaign of
> harassment."

(ECF No. 19 at 23).

Plaintiff's claims for injunctive relief shall proceed only against Defendants

Richardson, Harrington, and John Does 1-4 in their individual capacities as they

ORDER – 27

relate to the surviving First Amendment claims (based upon alleged adverse action nos. 2, 3 and 7) which merit further discovery.  Plaintiff's claim for injunctive relief to restore his custody status to minimum custody (ECF No. 19 at 23, ¶B(3)) is **Denied**.

**H.    28 U.S.C. § 1915(g) "Strike" Claim**

Defendants ask the court to classify the dismissal of Plaintiff's claims as a strike under the three strikes provision of the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(g). Section 1915(g) provides in full:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, *brought an action* or appeal in a court of the United States *that was dismissed on the grounds* that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g) (emphasis added).  However, where an action has at least one "meritorious claim amidst a sea of frivolous ones, the case cannot count as a § 1915(g) strike." *Taylor v. First Medical Management*, 508 Fed.Appx. 488 (10th Cir. 2012); *Lira v. Herrera*, 427 F.3d 1164, 1171–72 (9th Cir.2005) (interpreting "action" in the PLRA and its application in "mixed actions" of exhausted and unexhausted claims, noting that "actions" are treated in their entirety as juxtaposed to individual claims); *Tolbert v. Stevenson*, 635 F.3d 646, 647 (4th Cir. 2011).  Even if Defendants had been entirely successful, the court could not "give a strike" as a dismissal cannot ripen into a "strike" for purposes of § 1915(g) until after an appeal has either been waived or resolved.  *Silva v. Di Vittorio*, 658 F.3d 1090, 1099 (9th Cir. 2011).

**V.    CONCLUSION**

Congress enacted the Prison Litigation Reform Act partially in response to findings that the filing of frivolous lawsuits in federal court had become "a recreational activity for long-term residents of prisons." 141 Cong. Rec . S7498–01, S7526 (daily ed. May 25, 1995) (statement of Sen. Kyl). Claims by some prisoners that particular decisions have been made for retaliatory purposes may be prone to

ORDER – 28

abuse.  If every prisoner could assert such a claim as to every decision which he dislikes and full discovery were to be permitted on every such claim, the result would indeed be chaotic.  However, some of such claims may have merit and, where that is the case, the prisoners making them must be accorded the procedural and substantive rights available to other litigants.  The foregoing should not be construed as reticence on the part of this court to impose "strikes" in cases warranting it.

**IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (ECF No. 56) is **DENIED IN PART** and Plaintiff's Motion to Stay Summary Judgment Until Completion of Discovery Pursuant to Rule 56(d) (ECF No. 64) is **GRANTED IN PART** as to the following remaining  claims:

a.    Plaintiff's First Amendment claim against Defendant Harrington for unjustified interference with outgoing email on or about December 17, 2010 (Alleged Adverse Action No. 2);

b.    Plaintiff's First Amendment claim against Defendant Richardson for retaliation based upon an infraction he issued Plaintiff on December 23, 2010 because of content of an outgoing email (Alleged Adverse Action No. 3).

c.    Plaintiff's First Amendment unjustified interference with mail *and* retaliation claims against John Does 1-4 based upon the alleged restrictions of his incoming mail in May 2012 and June 2012 with content in Norwegian (Alleged Adverse Action No. 7).

d.    Plaintiff's requests for injunctive relief against these remaining Defendants on the surviving claims.  *See* ECF No. 19 at 23 ¶ B(1),(3), (4).

2. Defendants' Motion for Summary Judgment (ECF No. 56) is **GRANTED** and Plaintiff's Motion to Stay (ECF No. 64) is **DENIED** as to Plaintiff's remaining First Amendment claims based upon Alleged Adverse Action Nos. 1, 4, 5, 6, 7 (as against Defendants Klemme, Miller-Stout, Watkins, and Warner), 8, and 9.   These claims alleged in the Second Amended Complaint (ECF No. 19) are **DISMISSED**.

3. Discovery shall re-commence as to the surviving claims.  The court will

ORDER – 29

enter a separate Amended Scheduling Order re-setting the remaining pretrial deadlines and trial date.

4. Plaintiff's Motion to Amend Complaint to Identify John Does (ECF NO. 61) is **GRANTED**.   Plaintiff shall file a Third Amended Complaint by not later than **August 20, 2014**.  <u>Plaintiff shall not reassert any of the claims the court has already dismissed in this and prior Order(s)</u>.

IT IS SO ORDERED.     The Clerk of the Court is directed to enter this order and furnish copies to Plaintiff and counsel for the Defendants.

DATED this 22nd  day of July, 2014.

s/ Justin L. Quackenbush<br>
JUSTIN L. QUACKENBUSH<br>
SENIOR UNITED STATES DISTRICT JUDGE