UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NEIL GRENNING,

   Plaintiff,

vs.

RISA A. KLEMME, et al.,

   Defendants.

NO. CV-12-0600-JLQ

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is Defendants' Motion for Summary Judgment (ECF No. 99). Plaintiff is represented by attorney Jeffrey Finer, appointed by the court. The Defendants are represented by Timothy Feulner, Assistant Attorney General.

On May 7, 2015, four of the Defendants in this matter: Paul Barker, Ronald Doty, Bonnie Munden, and Thomas Orth, who work in the Department of Correction's Airway Heights Corrections Center ("DOC") mailroom ("mailroom Defendants"), filed the Motion for Summary Judgment (ECF No. 99). Plaintiff Neil Grenning, a prisoner at Airway Heights, filed a Response in Opposition on June 8, 2015 (ECF No. 108), to which the Defendants filed a Reply on June 19, 2015 (ECF No. 113). Grenning is serving a 1392-month (116 years) sentence for numerous 2004 Washington state child sex abuse conviction. ECF No. 57, at ¶ 2; Judgment and Sentencing, Pierce County Cause No. 02-1-01106-5. This matter, involving the screening of the Plaintiff's mail, was submitted without oral argument.

"While prisoners have the right to send and receive mail, prison officials have a legitimate interest in monitoring that mail for security reasons." *Ortiz v. Fort Dodge Correctional Facility*, 368 F.3d 1024, 1026 (8th Cir. 2004). Such regulations cannot be arbitrarily enforced, or used as a pretext to retaliate against inmates. *See Turner v. Safley*, 482 U.S. 78, 89-90 (1987). However, "when a prison regulation impinges on inmates'

ORDER - 1

constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id*. at 89. Here, the court finds that the Defendants' interpretation of the 2012 mail policy was rationally related to the legitimate penological interests of security and resource conservation. Grenning has not shown that the mail policy was used as a pretext to retaliate against him in violation of the First Amendment.

## I. History

Grenning claims that on December 17, 2010, Defendant Craig Harrington forwarded to Defendant Jack Richardson a portion of an outgoing email Grenning sent his mother that was critical of Richardson. On December 23, 2010, Richardson issued Grenning an infraction based on the content of that email, which was overturned on an internal appeal. On December 25, 2010, Grenning filed a staff misconduct grievance against Richardson and Harrington for wrongfully issuing the citation, which was denied on January 20, 2011.

Grenning contends that beginning in March of 2012, the mailroom Defendants retaliated against him for filing the grievance by restricting incoming correspondence from his family containing contents written in the Norwegian language:

| Date of rejection | Rejected by | Reason for rejection |
|---|---|---|
| March 5, 2012 | Ronald Doty | One page of correspondence part in a language other than English. |
| March 23, 2012 | Paul Barker | One page of correspondence part in a language other than English. |
| May 3, 2012 | Paul Barker | Letter mostly in English but parts in a foreign language. |
| May 24, 2012 | Paul Barker | Correspondence in a foreign language when sender has previously correcponded [sic] in English. |

ORDER - 2

| July 11, 2012 | Ronald Doty | Two pages of correspondence in language other than English. |
|---|---|---|

Defendant Thomas Orth is the Mailroom Sergeant and is named for his role in overseeing the mailroom operations. Defendant Bonnie Munden was not involved in any of the mail rejections at issue in this case.

The 2012 DOC mail policy defined unauthorized inmate mail as: "Mail in a foreign language with contents not understood by the inspecting staff, when reasonable efforts to have the mail interpreted have been unsuccessful." The policy allowed "[c]orrespondence up to 10 pages in length" to be "sent for translation services per the available contract at the discretion of the Mailroom Supervisor." ECF No. 100-1, DOC Mail policy 450.100: Unauthorized Mail, at ¶ 11.

Grenning was informed during these rejections that the DOC interpreted the mail policy as prohibiting letters containing some English and some foreign language. For instance, on April 8, 2012 Security Operations Manager Michael Watkins wrote to Grenning explaining:

> When the writer chooses to use another language and has clearly demonstrated the ability to use English within the same letter, it becomes an *unreasonable effort* to translate the use of the second language within that letter ... [Additionally,] when two languages are being used within the same letter, it can give the reviewer the impression that an unstated message is being transmitted between the writer and the receiver. This can lead the reviewer to believe the mail is 'in code.'

ECF No. 100-1; April 8, 2012 letter from Michael Watkins.

Another letter with the same "mixed language" explanation was sent to Grenning on October 29, 2012. Pursuant to the mail policy, inmates are "responsible for informing their correspondents of the rules governing offender mail." It is unclear whether Grenning ever informed his family of the policy. Grenning's family continued sending him letters written entirely in Norwegian, which were allegedly translated and delivered successfully. ECF No. 100-1, Decl. of Thomas Orth, ¶ 18.

In 2014, the DOC changed the mail policy to expressly prohibit mail written

ORDER - 3

partially in a foreign language when the author has demonstrated the ability to correspond in English. Defendant Orth maintains that:

> Regardless of the changes in the language of the policy, the practice in 2012 at AHCC was the same as it is today. Correspondence that was completely in a foreign language was sent for translation while correspondence that was written partially in English and partially in a foreign language was usually rejected. Additionally, correspondence by individuals who had demonstrated an ability to correspond in English was restricted.

ECF No. 100-1, Decl. of Thomas Orth, ¶ 9.

## II. Legal Standard

### A. Summary Judgment

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't. of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute. FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). Once the moving party has carried the burden, the opponent must show specific facts establishing there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1975).

### B. Qualified Immunity

Determining whether an official is entitled to qualified immunity requires a two-part analysis. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). The first inquiry is whether plaintiff's allegations, if true, establish a constitutional violation. *Saucier*, 533 U.S., at 201. Second, a determination is made whether the constitutional right was "clearly established." *Id.* A right is clearly establish if, at the time of the alleged act in the Ninth Circuit, "'it would be clear to a reasonable [prison official] that his conduct was unlawful in situation he confronted' ... or whether the state of the law [at the time of the alleged violation] gave 'fair warning' to [him] that [his] conduct was unconstitutional." *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) *quoting Saucier*, 533 U.S. at 202.

ORDER - 4

### III. Analysis

A. Unjustified Interference with Mail

Prisoners have a First Amendment right to receive mail; thus, "any limitation must be reasonably related to a legitimate penological interest." *Crofton v. Roe*, 170 F.3d 957, 959 (9th Cir. 1999). There are four factors in determining the reasonableness of a prison regulation that infringes on a constitutional right:

> (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally and (4) the existence of ready alternatives that fully accommodates the prisoner's rights at a *de minimus* cost to valid penological interests.

*Turner v. Safley*, 482 U.S. 78, 89-90 (1987).

The DOC interpreted its 2012 mail policy as prohibiting letters written partly in English and partly in a foreign language to prevent coded messages and to conserve resources by only translating letters sent by people who genuinely cannot write in English. Courts have held these are legitimate penological interests. *See, O'Keefe v. Van Boening,* 82 F.3d 322, 326 (9th Cir. 1996).

It is undisputed that Grenning had alternative means of communicating with his parents other than writing letters containing Norwegian. He is fluent in the English language. Grenning admits that, despite some limitations, both his parents are able to speak and write in English and Norwegian. ECF No. 100-1, Depo. of Neil Grenning, at 19. Rather than out of necessity, Grenning's parents switched to Norwegian when trying to convey a concept that has no direct translation in English. *Id.* Courts have upheld regulations that restrict inmate mail written in foreign languages when the author is capable of writing in English, utilizing a translator, or calling the inmate. *See Spitsyn v. Morgan*, 2008 WL 714095, at *5 (W.D. Wash., Mar. 14, 2008) (unreported); *Sisneros v. Nix*, 884 F. Supp. 1313, 1332 (S.D. Iowa, Mar. 6, 1995).

Prisons must make some effort to accommodate inmates who are unable to correspond with their family in English. *Kikumura v. Turner*, 28 F.3d 592 (7th Cir. 1994);

ORDER - 5

*Ramos v. Lamm*, 639 F.2d 559, 581 (10th Cir. 1980). If translation services are too expensive or not available, then a prison is generally permitted to restrict foreign language letters. *Spitsyn v. Morgan*, 2008 WL 714095 (W.D. Wash., Mar. 14, 2008) (unreported). Grenning argues Defendants should have accommodated him by translating the letters to him for screening regardless of whether they were fully or partially in Norwegian. Language Fusion, an organization with whom the DOC contracts for translation services, charges $23 to translate the first page and $7 for each subsequent page, regardless of the number of foreign words on each page. Thus, there would have been some cost associated with accommodating Grenning. DOC did use Language Fusion to translate Grenning's mail written entirely in Norwegian.

When inmates cannot correspond with their friends and family in English, courts have found that ready alternatives exist when the inmate identifies services willing to translate for free or at low cost. *Thongvanh v. Thalacker*, 17 F.3d 256, 259 (10th Cir. 1994). Thus, "a restriction is likely to be constitutionally permissible where the alternatives to the restriction are costly and not immediately apparent." *Kikumura*, 28 F.3d at 599. Besides Language Fusion, which is not free or low cost, Grenning submitted evidence that the Royal Norwegian Consulate might have been able to translate the letters at an unknown cost. ECF No. 88-2; July 3, 2012 letter from Kim Nesselquist.

Considering the *Turner* factors, the court finds that Defendants' interpretation and use of the 2012 mail policy was constitutional. Prohibiting letters containing both English and a foreign language is rationally related to prison security and conserving resources. Grenning had numerous other ways of corresponding with his family, both in English and Norwegian. Therefore, there was not a *de facto* ban on all Grenning's foreign mail, only a ban on mail containing multiple languages, which DOC staff informed Grenning about at least twice. Defendants could have translated these letters, but they made the reasonable decision to save those DOC resources for people who genuinely cannot correspond in English. It was Grenning's responsibility to inform his family of the policy decision, and he did not. Grenning has not established unjust interference with mail.

B. Retaliation

Under the First Amendment, prison officials may not retaliate against prisoners for initiating litigation or filing administrative grievances. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005). A viable First Amendment retaliation claims has five elements: (1) an assertion that a state actor took some adverse action against the inmate (2) because of (3) the inmate's protected conduct and that the adverse action (4) chilled the inmate's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate penological purpose. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) *quoting Rhodes*, 408 F.3d at 567-68.

Grenning argues that the mail policy, even if facially valid, was used as a pretext by Defendants to retaliate against him for having filed a grievance against Harrington and Richardson. As evidence, Grenning points to his mother's declaration, wherein she asserts that she and other friends and family members had written to Grenning using both English and Norwegian for several years, but that the rejections only began after the "incident with Sgt. Richardson." ECF No. 110-1, Decl. of Cheryl Grenning, at ¶¶ 3-5. Grenning has also provided declarations from inmates Jeremy Williams (ECF No. 111) and Stephen Kerr (ECF No. 112) who attest that they received foreign language mail for years without restrictions. Defendants respond that the AHCC mailroom processed 122,968 letters in 2012 and was thus unable to catch every violation.

To prove retaliation, the plaintiff "must initially show that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision." *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) *quoting Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). The burden then shifts to defendants to prove "by a preponderance of the evidence that they would have reached the same decision in the absence of the protected conduct." *Id.* at 1315. "[T]iming can be considered as circumstantial evidence of retaliatory intent." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). However, "[t]he mere fact that restrictions on plaintiff's mail ... followed his filing of grievances or other protected activity does not suffice to

ORDER - 7

demonstrate retaliatory intent." *Barstad v. Department of Corrections*, 2015 WL 1867082, at *26 (W.D. Wash., April 23, 2015).

Grenning's evidence of retaliation is largely that of just timing, and even that is attenuated because over a year elapsed between his protected speech (December 25, 2010) and the first mail restriction (March 5, 2012). Additionally, there is no evidence connecting Richardson or Harrington to any of the mailroom Defendants regarding the mail restrictions, only Grenning's assertion that there exists a general "campaign of harassment" promulgated by DOC staff against him.

The Declarations by Williams and Kerr do provide some support for a claim that Grenning was treated differently. However, Williams contends that he was able to receive letters containing English and Spanish, which Defendants explain is typical because "AHCC has staff on site that can translate Spanish" and thus Spanish mail is treated more leniently. ECF No. 114 at ¶ 5.

Kerr, on the other hand, contends that he received correspondence in several foreign languages and has never had any rejected. ECF No. 112, at ¶ 4. However Kerr does not specify how many, or if any, letters contained both English and a foreign language, which is the key point. Nevertheless, this, along with Cheryl Grenning's Declaration, might suggest that Grenning was treated differently.

The court finds that the record does not establish a *prima facie* showing that the grievance was a substantial or motivating factor behind the mail rejections. The timing is too attenuated. The protected speech and the restrictions involve different Defendants. DOC staff twice told Grenning why his letters were being restricted and instructed him how to fix it - this demonstrates Defendants were attempting to help Grenning correct the rejections, not find ways to retaliate. Indeed, Defendants continued to translate his letters written entirely in Norwegian. While others inmates allegedly received letters that violated the mail policy, Defendants explain that the volume of incoming mail inevitably leads to some mistakes. These undisputed facts do not paint a picture of retaliation, but rather of Grenning not following mail regulations, which were expressly made clear to

him multiple times. Grenning has not established retaliation.

## IV. Conclusion

The court finds that Defendants are entitled to Summary Judgment on Grenning's First Amendment claims regarding the rejection of letters written partially in Norwegian and partially in English. Defendants are entitled to qualified immunity as a matter of law because Grenning has not sufficiently established the violation of a clearly established constitutional right on either his unjust interference with mail or retaliation claims.

**IT IS HEREBY ORDERED:**

1. Defendants' Barker, Doty, Munden, and Orth Motion for Summary Judgment (ECF No. 99) is **GRANTED**.

2. Plaintiff's claims against Defendants Paul Barker, Bonnie Munden, Ronald Doty, and Thomas Orth are dismissed with prejudice.

3. Plaintiff's claims against Defendants Jack Richardson and Craig Harrington remain set for trial on August 17, 2015.

**IT IS SO ORDERED.** The Clerk is directed to enter this Order and forward a copy to Plaintiff, counsel for Plaintiff, and Defendants.

Dated this 6th day of July, 2015.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE